Luz Patria Ramos, representada por su madre Ezequiela Ramos Carrillo, demandante y apelante, *v.* María Augy Mathéleis, demandada y apelada.

Núm. 8350.—*Sometido:* Marzo 11, 1942. *Resuelto:* Marzo 19, 1942.

*E. Díaz Santana* y *E. Mieres Calimano* (*José Soto Rivera* en el alegato), abogados de la apelante; *E. H. F. Dottin*, abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

La acción de filiación que motivó la sentencia objeto de este recurso fué interpuesta por una menor que alega haber nacido el 14 de noviembre de 1935, cuyo supuesto padre Guillermo Selosse Augy falleció el 4 de diciembre de 1937, y cuya madre, que había contraído matrimonio con José Ignacio Morales el 16 de octubre de 1931, quedó divorciada el 5 de octubre de 1934. Como la principal defensa interpuesta por la apelada es la de que la menor demandante nació mucho antes del año 1935, la cuestión primordial en este recurso es determinar si incurrió o no en manifiesto error la corte sentenciadora al resolver que la demandante, el 23 de septiembre de 1940, fecha del juicio, tenía más de seis años de edad. Si dicha conclusión es correcta, la demandante nació antes del 23 de septiembre de 1934, y siendo ello así, aunque en realidad fuese hija de Guillermo Selosse, no podía tener la condición de natural, toda vez que a la fecha de su concepción, y aun en la de su nacimiento, su madre era la esposa de José Ignacio Morales y por consiguiente no podía contraer matrimonio con dicho Guillermo Selosse.

La prueba sobre ese extremo es contradictoria. La de la demandante consiste en evidencia testifical exclusivamente, pues según la madre de ésta, la menor no fué inscrita en el Registro Demográfico ni tampoco ha sido bautizada. La evidencia de la demandada consistió principalmente en la decla-

ración del perito Dr. J. R. Hernández González, cirujano dentista, y en prueba testifical.

Hagamos un estudio comparativo de la evidencia de una y otra parte sobre ese extremo.

Ezequiela Ramos, madre de la demandante, declaró que la niña nació el 14 de noviembre de 1935 en la casa de José Agosto, en Hato Rey; que no está inscrita en el Registro Demográfico ni ha sido bautizada; que como un año antes del nacimiento de la niña empezó a vivir en concubinato con Guillermo Selosse y continuó esa relación durante cuatro años más después del nacimiento de la niña hasta el fallecimiento de Selosse en 1937.

Olimpia Gil fué la comadrona que asistió a la madre de la demandante al nacer ésta. Declaró que la niña nació el 14 de noviembre de 1935; que recuerda esa fecha porque lleva una libreta de los partos que asiste; que conoció a Ezequiela Ramos como tres o cuatro años antes de nacer la niña porque eran vecinas.

José Agosto, dueño de la casa donde se dice que nació la demandante, declaró que ésta nació allá por el año 1935; cerca de las Navidades. A preguntas del juez contestó que al contraer matrimonio con su actual esposa era viudo, pero no recuerda cuándo enviudó. Cree que fué en 1918. Recuerda la fecha del nacimiento de la demandante porque fué en unas Navidades, pero el testigo no recuerda si su matrimonio fué contraído cerca de las Navidades, del Carnaval o Semana Santa.

Agustina Carrillo, abuela materna de la demandante, declaró que Selosse estuvo viviendo con su hija como dos años antes de nacer la demandante, quien nació, según la testigo, en el año 1935.

La evidencia de la demandada sobre el extremo en cuestión consistió en la declaración de Francisco Hernández Santiago y en el informe pericial del Dr. J. R. Hernández González, cirujano dentista. El primero declaró que hacía como trece años conocía a la madre de la demandante; que siem-

pre ha vivido cerca de ella; que la demandante nació unos meses después del ciclón de San Ciprián y que desde antes de esta última fecha, o sea en septiembre de 1932, Ezequiela Ramos y José Ignacio Morales estaban separados; que vió a la niña por primera vez cuando tenía como diez o doce días de nacida.

El Dr. J. R. Hernández González declaró que es dentista y que en la fecha del juicio hacía veintitrés años que ejercía su profesión en Puerto Rico. Después de examinar la boca de la demandante a requerimiento de la demandada, y en presencia de la corte, manifestó:

"Esta niña tiene las muelas de los seis años, las cuatro muelas completamente afuera y tiene los dientes incisivos o cuneiformes inferiores que corresponden a la edad de siete y ocho años y tiene aquí (señalando en la boca de la niña) el premolar permanente superior del lado izquierdo a punto de salir y que debe estar completamente afuera a los nueve años y que ahora se está iniciando." (T. de E., pág. 94)

Terminado el examen directo, la demandante lo sometió al siguiente contrainterrogatorio:

"P. ¿Usted puede decir, con vista del examen a la niña, cuál es la edad de ella?—R. De acuerdo con los dientes que tiene afuera, ella no tendría menos de 8 años. Ella tiene los dientes inferiores, que corresponden a la edad de 8 años, completamente afuera.—P. ¿Esta es una regla invariable u ocurre que los dientes de leche se mudan en distintas épocas?—R. Varía algunas veces.—P. ¿Qué lo hace variar, en que unos se adelantan y otros se atrasan?—R. Depende del desarrollo del niño.—P. ¿No depende también de las condiciones de los padres?—R. Puede influir algo también.—P. ¿Y en la alimentación que haya tenido el niño?—Con la alimentación deficiente puede retardar un poco.—Según puede retardar la alimentación deficiente, ¿puede adelantar la alimentación eficiente?—R. Lo que puede pasar, como en Estados Unidos sucede mucho eso, pero si vamos a considerar las condiciones en Puerto Rico, eso es raro.—P. ¿Pero ocurre?—R. Puede ocurrir." (T. de E., pág. 95)

"             *        *        *        *        *        *        *

"P. ¿Usted se atreve asegurar a la corte la edad de esa niña por lo que usted ha observado en sus dientes?—R. De acuerdo con las

prácticas diarias, ésa es la edad que debería tener ella normalmente hablando. A ella le está despuntando un molar que no sale antes de los 9 años y basándome en ese hecho es que digo que puede tener no menos de 8 años, porque esa niña ya tiene los dientes laterales inferiores fuera, que es a la edad que normalmente salen. Los centrales salen a los 7 años y los laterales a los 8 y la primer bicúspide a los 9 años y ya ella tiene el despunte de la premolar superior izquierdo.—P. ¿De acuerdo con la conclusión suya, esta niña, la edad mínima de esta niña, serían 8 años, mucho más que menos?—R. Sí, posiblemente.

"Nada más.

"Sr. Juez: P. ¿Usted ha declarado que esa conclusión en esta niña puede variar según el desarrollo de cualquier niño?—R. Pudiera variar, pero eso sucede algunas veces, pero realmente ella tiene dientes que pudiera ser que en la boca de una niña muy desarrollada o bien alimentada estuvieran fuera a la edad de seis años, pero no la bicúspide o eliminando el despunte de la bicúspide. Es corriente en los Estados Unidos que a la edad de 6 años haya niños con los inferiores fuera. Primero salen los centrales y luego los laterales y entre los 7 y 8 años unos más arriba y otros más abajo. Ahí (demostrándolo con la boca de la niña) no hay dientes más arriba o más abajo. P. ¿Esos son los dientes que normalmente salen a los 8 años?—R. Sí, señor.—P. ¿A menos que hubiera un desarrollo que salieran a los seis?—R. Sí, señor.—P. ¿Y esta niña, por su aspecto físico, demuestra ese desarrollo?—R. Yo no lo creo. Pudiera ser, todo puede pasar, pero normalmente eso no pasa.—P. De ser una niña completamente desarrollada, ¿pudiera tener los dientes a los seis años?—R. Sí, señor, y en los Estados Unidos eso pasa mucho por el clima y la clase de alimentación la favorece mucho y aquí en Puerto Rico eso es muy raro y son bastante retardados. Yo no veo ninguna cosa en su físico que pudiera demostrar que ella pudiera tener esos dientes a los seis años tan perfectos." (T. de E., págs. 97, 98)

El Dr. Manuel Soto Rivera, médico cirujano y hermano del abogado de la demandante, declaró en *rebuttal* que la Medicina no es una ciencia exacta, que existen reglas generales pero que todas tienen su excepción; que se supone que ciertos dientes salen a cierta edad y otros a otra; que a veces ciertos dientes aparecen relativamente más tarde en unos individuos que en otros, y que existen algunas personas que

jamás echan los dientes; que el dentista Sr. Hernández había estado correcto al decir la edad en que aparecen las piezas de la dentadura, pero que el dentista tendría que admitir que ésa no es una regla inflexible. Al preguntársele por la demandada si él podría decir a la corte que la demandante era una de esas excepciones por él mencionadas, contestó que no podría asegurarlo porque para ello tendría que hacer un estudio muy detenido del caso.

La declaración del médico no destruyó el dictamen del dentista, el cual está robustecido por la declaración jurada de la madre de la demandante en su moción solicitando permiso para litigar como pobre, fechada el 12 de abril de 1940, en la que expresó que para aquella fecha su hija tenía seis años de edad. También lo robustece la declaración de la misma señora en el juicio al manifestar que después de nacida la niña, continuó viviendo con Selosse por espacio de cuatro años, hasta su muerte, acaecida como sabemos el 4 de diciembre de 1937, lo que implica que dicha niña debió haber nacido cuatro años antes, o sea en diciembre de 1933. Además, es de tener en cuenta muy especialmente la circunstancia de que el juez inferior tuvo la oportunidad de ver la niña durante el juicio y apreciar su desarrollo físico, circunstancia ésta que de convenir con el dictamen del perito debió inclinarle a darle entero crédito, como en efecto se lo dió. Aceptando, pues, que el día del juicio la menor demandante tuviera no ya más de ocho años como sostiene el dentista, sino siete, como resulta de la declaración de su madre, fuerza es concluir que la fecha de su nacimiento debió ser aproximadamente en septiembre de 1933. Estando para esa fecha casada su madre con José Ignacio Morales, toda vez que el divorcio se decretó el 5 de octubre de 1935, claro es que la demandante, asumiendo que fuese hija de Guillermo Selosse, no podría alegar con éxito su condición de hija natural. Siendo éste un requisito indispensable para que prospere la acción de filiación, preciso es concluir que actuó correcta-

mente la corte sentenciadora al desestimar la demanda en este caso.

*Por lo expuesto, procede la confirmación de la sentencia apelada.*

El Juez Asociado Sr. Travieso no intervino.